IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GABRIEL GONZALES,

    Plaintiff,

v.                                            No. 15cv711 MCA/LAM

BRINKER INTL PAYROLL CO, LP
d/b/a CHILI'S BAR & GRILL,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *Defendant's Motion to Compel Binding Arbitration and to Dismiss or Stay*. [Doc. 9] The Court, having considered the parties' submissions, the relevant case law, and being otherwise fully informed in the premises, hereby defers ruling on the motion pending a summary bench trial of whether Plaintiff agreed to the "Agreement to Arbitrate."

**BACKGROUND**

Plaintiff, a former employee of Defendant, filed suit in the Twelfth Judicial District Court of the State of New Mexico for violation of the Family Medical Leave Act. [Doc. 1; Doc. 1-2, pp. 3-4] Defendant removed the case to this Court [Doc. 1] and then filed its *Motion to Compel Binding Arbitration*, stating that, in applying for the position with Defendant on March 28, 2013, Plaintiff electronically agreed (by clicking on a box) to "read and agree to resolve all disputes with Brinker in accordance with Brinker's Agreement to Arbitrate Policy. (Click link above). Do you affirm that you have read the

1

Agreement to Arbitrate and agree to resolve all disputes that arise between you and Brinker through formal, mandatory arbitration?" [Doc. 9, ¶ 5]  Defendant further states that "As part of the 'onboarding' process, Plaintiff also executed an arbitration agreement.  A copy of the Agreement to Arbitrate, [electronically] signed by Plaintiff on April 9, 2013 . . . is attached hereto as Exhibit D." [Doc. 9, ¶ 8]

In response, Plaintiff denies that he was provided a copy of the arbitration agreement and states that he "never did agree to such." [Doc. 10, ¶ 1]  Plaintiff submits an affidavit stating the following:

> 3.  Before [July 20, 2015], and specifically during my application process with Chili's, I was never presented with [the "Agreement to Arbitrate"], in any form or through any media, and I have never agreed to the terms of the agreement.
> 4.  I know that during my application process and during my employment at Chili's, Heather Henderson and Eric Lucero had access to my electronic account with Chili's and would perform tasks in my account to make it appear to Chili's that I had taken tests or reviewed documents online.

[Doc. 10-1]

In addition to providing printouts from its employment application software, Defendant replies by submitting the affidavit of Heather Henderson (but not Mr. Lucero) in which Ms. Henderson states, *inter alia*:

> Neither I nor Eric Lucero nor any other Restaurant employee had access to Mr. Gonzales' username and password, both of which were necessary (a) to make entries by him or on his behalf in the process of his online employment application, or (b) for him to submit information or to complete documents in the onboarding process.  More specifically, neither I nor Eric Lucero, nor any other Restaurant employee, was able to electronically answer any question in the application process, or to sign any document electronically at any time, on behalf of Mr. Gonzales.

[Doc. 11-2, ¶ 12]  Defendant further submits two affidavits executed by Mr. Loeffler, its custodian of records for Defendant's on-line employment application and hiring process tracking software.  Mr. Loeffler states:  "A candidate's existence, interest in a job and information are not available to anyone employed by or associated with Brinker until after the candidate completes and e-signs his or her application and all required documents[,]" which included Plaintiff's agreement to the Arbitration Agreement.  [Doc. 11-1, ¶ 17]  Mr. Loeffler details the dates and times the software shows that Ms. Henderson and Mr. Lucero accessed the software to view and take action on Plaintiff's application.  [Doc. 11-1, ¶¶ 18-19]  He also states that the software "recorded the IP address of the computer used by Plaintiff to complete and submit his application and to e-sign that application and related documents."  [Doc. 11-1, ¶ 15]  Mr. Loeffler concludes that "Plaintiff's application, eSignature authorization and e-signed affirmation of agreement to arbitrate were all completed by the Candidate from the aforementioned *off-site computer*" (emphasis added) prior to Ms. Henderson or Mr. Lucero accessing the completed application.  [Doc. 11-1, ¶ 23]  However, Mr. Loeffler does not explain what evidence shows that the IP address Defendant used was an "off-site computer."  Finally, Mr. Loeffler provides more information about Plaintiff's alleged activities concerning his password as well as other facts demonstrated by the software.  [Doc. 11-1]

**ANALYSIS**

Through the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, Congress took action to place "arbitration agreements on an equal footing with other contracts, and require[] courts to enforce them according to their terms."  *Rent-a-Center, West, Inc. v.*

*Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted).  The FAA preempts state law to the extent that state law is hostile to agreements to settle disputes through arbitration.  *Salazar v. Citadel Commc'ns Corp.*, 90 P.3d 466, 469 (N.M. 2004).  "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'ring, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).  "Generally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute."  *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (internal quotation marks and citations omitted); *see also Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (stating that state law governing the validity and enforceability of contracts generally may be applied to arbitration agreements under the FAA).

New Mexico law, like federal law, favors arbitration.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985); *Durham v. Guest*, 204 P.3d 19, 27 (N.M. 2009).  New Mexico law requires that, "to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent."  *Garcia v. Middle Rio Grande Conservancy Dist.*, 918 P.2d 7, 10 (N.M. 1996); *see Flemma v. Haliburton Energy Servs., Inc.*, 303 P.3d 814, 822 (N.M. 2013) (applying New Mexico contract law to the question of whether a binding agreement to arbitrate exists).

While Defendant argues that the dispute here can be decided as a motion to dismiss, Plaintiff argues that summary judgment standards apply to *Defendant's Motion*

*to Compel Arbitration.* Our Tenth Circuit put the procedural issue to rest, however, in *Howard v. Ferrellgas Partners, LP*, 748 F.3d 975, 977 (10th Cir. 2014):

> What happens when it's just not clear whether the parties opted for or against arbitration? The FAA tells district courts to "proceed summarily to the trial" of the relevant facts. 9 U.S.C. § 4. Once the facts are clear, courts must then apply state contract formation principles and decide whether or not the parties agreed to arbitrate. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir.2006).

Thus, when "material disputes of fact *do* exist on the question whether the parties agreed to arbitrate" the Act "calls for a *summary trial*." *Id.* at 978 (emphasis in original). In pertinent part, the Federal Arbitration Act states: "If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

This case presents the classic party 1 said versus party 2 said scenario, which can only be resolved by the judicial fact finding process of a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (defining a "genuine issue" as one where the evidence before the Court is of such a nature that "a reasonable jury could return a verdict for the nonmoving party" as to that issue; and defining a material fact as one which "might affect the outcome" of the case.). Under New Mexico law, in circumstances such as these, the "court may hear evidence of the circumstances surrounding the making of the contract[.]" *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993) (internal quotation marks and citation omitted). "[V]iewing the facts in the light most favorable to the party opposing arbitration," *Howard*, 748 F.3d at 978, neither summary dismissal nor summary judgment are appropriate.

Plaintiff did not demand a jury, and thus the Court will hold a bench trial. 9 U.S.C. § 4 ("If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue."). In the meantime, if the parties are interested in attempting to resolve this matter through mediation, the Court encourages the parties to do so.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, *Defendant's Motion to Compel Binding Arbitration and to Dismiss or Stay* is **DEFERRED** pending a summary bench trial on the sole issue of whether Plaintiff agreed to Defendant's Agreement to Arbitrate.

SO ORDERED this 17th day of June, 2016 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge