IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GABRIEL GONZALES,

    Plaintiff,

v.                                                                                          No. 15-CV-711 MCA/GJF

BRINKER INTL PAYROLL CO, LP
d/b/a CHILI'S BAR & GRILL,

    Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AND MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on a bench trial of the sole issue of whether the parties agreed to resolve their disputes through mandatory arbitration, as explained further in the Court's June 17, 2016 *Memorandum Opinion and Order*. [Doc. 15] *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof"). The Court held the trial on November 9, 2016, in Albuquerque, New Mexico. Having considered the submissions, the relevant law, heard the parties, and being otherwise fully informed in the premises, the Court finds that Defendant met its burden to establish by the preponderance of the evidence that Plaintiff agreed to mandatory arbitration to resolve disputes between himself and Brinker, and therefore, the Court hereby **ORDERS** that this matter is stayed and Plaintiff must submit his claim to arbitration as set forth in the "Agreement to Arbitrate."

1

**FINDINGS OF FACT**

1. Plaintiff applied for a position ("To-Go Specialist" at the Chili's Restaurant in Alamagordo) with Brinker International Payroll on March 28, 2013. According to Plaintiff, he completed his application online, using Defendant's "Taleo" system, on his brother's computer at his brother's house.

2. Brandon Loeffler is employed by Brinker as a Talent Systems Analyst.

3. Mr. Loeffler designed the job application and onboarding procedures (pre-hiring paperwork and orientation procedures) in the Taleo system and testified about the online application and the onboarding procedures.

4. Mr. Loeffler testified that, as shown on the manager's view of the online application, Exhibit A, pages 12-13, there are six prescreening, disqualification questions the applicant must answer when completing the application.

5. The sixth prescreening question on the job application states:

   > To be considered for employment, you must read and agree to resolve all disputes with Brinker in accordance with Brinker's Agreement to Arbitrate Policy (click link above). Do you affirm that you have read the Agreement to Arbitrate and agree to resolve all disputes that arise between you and Brinker through formal, mandatory arbitration?

   [Exhibit A, p. 13 of 22]

6. According to Mr. Loeffler, if an applicant does not answer all six questions, the application will not be completed or submitted to the hiring manager.

7. According to Mr. Loeffler, if an applicant answers "No" to question six, the applicant receives a message stating that Brinker is not going to continue with the application process.

8. According to Mr. Loeffler, a Brinker manager could not get on an applicant's profile and change an answer or add an electronic signature on behalf of the candidate unless the manager had the employee's user name and password.

9. The Court finds Mr. Loeffler's testimony credible in all respects.

10. Exhibit A, Plaintiff's application, indicates that Plaintiff answered "Yes" to question six.  [Exhibit A, p. 13]

11. Plaintiff testified that he specifically remembered all questions on the application except:  1) the question regarding whether he could perform the essential functions of the job; and 2) the question of whether he agreed to the arbitration policy.

12. Plaintiff testified that he went in for a first interview with Eric Lucero and a second interview with Heather Henderson.

13. Plaintiff testified that when he met with Heather Henderson she asked him to take some photographs of the kitchen with his personal cell phone and send them to her at her personal email address.

14. Plaintiff testified that, during this meeting, he and Ms. Henderson went to the office in the Chili's in Alamagordo, and she sat at the computer.  So that she could retrieve the photographs Plaintiff took, Ms. Henderson asked Plaintiff for his email address and password, and Plaintiff testified that he gave those to her.

15. Plaintiff also testified that Ms. Henderson asked for Plaintiff's Taleo user name and password, and he gave them to her.

16. According to Plaintiff, Ms. Henderson then completed paperwork for him. According to Plaintiff, "She said that none of that stuff was important at the time for my hiring process, that it was, I don't know how to put this. A bunch of useless information."

17. Thus, Plaintiff testified that he never saw or agreed to an arbitration agreement when applying for a position with Defendant.

18. Heather Henderson testified on behalf of Defendant.

19. Ms. Henderson is the Managing Partner at the Chili's in Alamagordo.

20. Ms. Henderson remembers meeting with Plaintiff prior to hiring him at which he told her why he left his previous job. She has no other specific recollection about meeting with Plaintiff during the application, hiring, or onboarding process.

21. Ms. Henderson stated that she has never asked an employee for his or her Taleo user name and password.

22. Ms. Henderson also testified that, to her knowledge, the computer at the Chili's in Alamagordo does not have "internet access per se" that would allow anyone to access personal emails. Instead, the computer is "a slave to the network that we're connected to, so it only connects to home office computers. . . . [I]t only opens the tools that we use. It's not like a personal computer." Accordingly, Ms. Henderson could not have accessed Plaintiff's personal email account with the computer in the Alamagordo Chili's office.

23. The Court finds Ms. Henderson's testimony credible in all respects.

24. The Court finds that Plaintiff's testimony is not credible to the extent that it conflicts with the testimony of Ms. Henderson and Mr. Loeffler.

25. The Court finds that the testimony of Mr. Lucero, former Assistant Manager at the Chili's in Alamagordo, offered little to the Court in considering the dispute regarding whether Plaintiff agreed to the "Agreement to Arbitrate."

26. Defendant's Exhibits A, D, and E demonstrate that Defendant twice expressly asked Plaintiff to agree to the "Agreement to Arbitrate," and both times Plaintiff objectively manifested his assent to "the resolution of all disputes that arise between you and Brinker through formal, mandatory arbitration before a neutral arbitrator."  [Exhibit A, p. 13 of 22; Exhibit E, page 10 of 27]

27. The Court finds that Plaintiff agreed to arbitrate any employment disputes he had with Defendant, as evidenced by answering "Yes" to question six on his application [Exhibit A, p. 13 of 22], and as evidenced by his electronic signature on the "Agreement to Arbitrate." [Exhibit E, page 11 of 27, ¶1]

28. In pertinent part, the "Agreement to Arbitrate" states:

> [A]ny legal or equitable claims or disputes arising out of or in connection with employment, terms and conditions of employment, or the termination of employment with Brinker will be resolved by binding arbitration instead of in a court of law or equity.  This agreement applies to all disputes involving legally protected rights (e.g., local, state and federal statutory, contractual or common law rights) . . . .
>
> This Agreement to Arbitrate substitutes one legitimate dispute resolution form (arbitration) for another (litigation), thereby waiving any right of either party to have the dispute resolved in court.  This substitution involves no surrender, by either party, of any substantive

>statutory or common law benefits, protection or defense for individual claims.

[Exhibit E, p. 10 of 27, ¶¶ 2-3]

29. Plaintiff does not dispute that the language of the "Agreement to Arbitrate" compels arbitration of his FMLA claim. [Doc. 10]

30. The Court finds that the Defendant met its burden to establish by the preponderance of the evidence that Mr. Gonzales agreed to mandatory arbitration to resolve disputes between himself and Brinker.

31. The Court finds that the "Agreement to Arbitrate" includes Plaintiff's FLMA claim.

**CONCLUSIONS OF LAW**

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, to place "arbitration agreements on an equal footing with other contracts, and require[] courts to enforce them according to their terms." *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). The FAA preempts state law to the extent that state law is hostile to agreements to settle disputes through arbitration. *Salazar v. Citadel Commc'ns Corp.*, 90 P.3d 466, 469 (N.M. 2004). Nonetheless, "[g]enerally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (internal quotation marks and citations omitted); *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (stating that state law governing the validity and enforceability of contracts generally may

be applied to arbitration agreements under the FAA). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

> In New Mexico, arbitration is a highly favored method of resolving disputes in part because it promotes both judicial efficiency and conservation of resources by all parties. As a result, when parties have agreed to arbitrate, the courts must compel arbitration. However, a legally enforceable contract is a prerequisite to arbitration; without such a contract, parties will not be forced to arbitrate.

*Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 5, 107 P.3d 11 (internal quotation marks, citations and brackets omitted). "A legally enforceable contract requires evidence supporting the existence of an offer, an acceptance, consideration, and mutual assent." *Id.* ¶ 6 (internal quotation marks and citations omitted).

Defendant, as the party seeking to prove the existence of the arbitration agreement, bears the burden of proof to establish, by a preponderance of the evidence, that Plaintiff agreed to the arbitration agreement. *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 42, 304 P.3d 409 ("[T]he party seeking to compel arbitration bears the initial burden to prove that a valid contract exists."); *Farmington Police Officers Ass'n v. City of Farmington*, 2006-NMCA-077, ¶ 16, 137 P.3d 1204 ("[W]here the meaning of a material contract term is in dispute a party seeking affirmative relief based upon its interpretation necessarily bears the burden of establishing that its interpretation controls").

The "Agreement to Arbitrate" clearly requires all disputes, including Plaintiff's FMLA dispute, to be submitted to arbitration. Defendant asked Plaintiff to agree to the "Agreement to Arbitrate" twice during the hiring process, and both times Plaintiff objectively manifested his assent.[1] Plaintiff challenged only the element of mutual assent [Doc. 10, p. 3], and the Court concludes that the remaining requirements for a valid contract, i.e., offer, acceptance and consideration, are present here. *See generally Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022, ¶¶ 28-29, 303 P.3d 814 (stating that elements required for a valid contract to arbitrate and discussing consideration).

Because Plaintiff agreed to the legally valid "Agreement to Arbitrate," the Court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3; *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 954-55 (10th Cir. 1994) (holding that it was error, under the plain language of the FAA, to dismiss an action and order arbitration where the moving party moved for a stay of the action).

**CONCLUSION**

**WHEREFORE,** for the foregoing reasons, the Court **HEREBY ORDERS**:

1)   *Defendant's Motion to Compel Binding Arbitration and to Dismiss or Stay* [Doc. 9] is hereby **GRANTED**;

---

[1] Having been provided with the "Agreement to Arbitrate," Plaintiff had the duty to read it and familiarize himself with the contents before agreeing to its terms. *Sisneros v. Citadel Broad. Co.*, 2006-NMCA-102, ¶ 18, 142 P.3d 34.

2) The Court **HEREBY COMPELS** Plaintiff to pursue arbitration pursuant to the procedures in the "Agreement to Arbitrate";

3) This matter is **HEREBY STAYED** pending arbitration;

4) Defendant is **ORDERED** to file a Joint Status Report on the Status of the Arbitration within three (3) months of the date of this Order and every three (3) months thereafter.

**SO ORDERED** this 30th day of November, 2016 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court